NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TERESA EDELGLASS, | : | |
| | : | Civil Action No. 3:17-cv-12081-BRM-TJB |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| ULTA SALON, COSMETICS, | : | |
| FRAGRANCE, INC. d/b/a | : | |
| ULTA BEAUTY | : | |
| | : | |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Ulta Salon, Cosmetics & Fragrance, Inc.'s ("Ulta") Motion to Dismiss Plaintiff Teresa Edelglass's ("Edelglass") Amended Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) Edelglass opposed Ulta's Motion. (ECF No. 14.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Ulta's Motion to Dismiss the Amended Complaint is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Edelglass. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "'document *integral to or explicitly relied upon* in the complaint.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This case arises from a keratin hair treatment (the "Treatment") Edelglass received from a stylist at Ulta's salon in Howell, New Jersey on October 17, 2015. (Amended Complaint (ECF No. 12 ¶ 8).) Edelglass sought out the Treatment to make her hair "more manageable through improving its quality and appearance," which is "one of the intended purposes of a keratin treatment." (*Id.* ¶ 9.) Before the Treatment, Edelglass's hair "was in good condition." (*Id.* ¶ 10.) It was "about 30 inches long from crown to ends," and when caring for her hair, she avoided the use of bleach, blow dryers, flat irons, or any other "potentially damaging" hair care products. (*Id.*) Edelglass had never before undergone a keratin treatment on her hair, so in preparation for the Treatment, she gathered information through Internet searches and underwent "a lengthy interview with an employee at [Ulta]." (*Id.* ¶ 11.)

Edelglass was assigned a "Level 3 stylist" and was assured that the stylist "was fully trained and experienced in the commission of administering keratin treatments." (*Id.* ¶ 12.) On the day of the Treatment, the assigned stylist noted that her "Level 3" status was not a reflection of her experience. (*Id.*) Rather, the stylist explained that Ulta did not assign "levels" based on

---

[1] The factual background of this dispute is more fully set out in this Court's July 17, 2018 Opinion granting Ulta's Motion to Dismiss Edelglass's first Complaint. (ECF No. 10.) Accordingly, the facts are supplemented herein as necessary for this Opinion.

experience but rather on the number of customers a stylist brought from previous employers. (*Id.*) As a result, "the more clients a stylist can bring with [them] to the salon from [their] previous salon . . . the higher level a stylist will be when hired." (*Id.*) Even though Edelglass's stylist was not assigned the top level of stylist, Edelglass was not worried about "getting lesser service" because "the stylist told [Edelglass] that she had been a hair stylist longer than anyone [] at that salon but that she had taken time off to raise her children." (*Id.*)

After her stylist completed the Treatment, the stylist's co-worker "unwittingly commented to Plaintiff's stylist that this was her first time administering a keratin treatment." (*Id.* ¶ 13.) Specifically, while referring to the keratin treatment, the stylist's co-worker remarked "Oh! You finally got to do one!" (*Id.*)

Edelglass used a 25% discount offer when paying for the Treatment. (*Id.* ¶ 14.) Edelglass was not told "by anyone at Ulta, including the stylist, that [because she used the discount offer, the Treatment] would not include the many extra vials of product needed" to treat hair of her length. (*Id.*) Edelglass first noticed her hair was damaged about ten days after the Treatment when she tried washing it for the first time. (*Id.* ¶ 15.) Upon trying to wash her hair, Edelglass "immediately knew something was wrong." (*Id.*) Edelglass states that "[h]er hair felt rubbery," that she spent over an hour trying to comb her hair, and that when her hair dried, "it was an uncontrollable, frizzy mess." (*Id.*)

Upon returning from vacation, Edelglass contacted Ulta and received a full refund. (*Id.* ¶ 16.) Edelglass claims Ulta offered to remedy the damage to her hair but offered no explanation for the damage other than to attribute the problem to the KeraStraight product used on her hair, and to claim that "sometimes but rarely [keratin treatments] . . . don't work on some people." (*Id*.) In January 2016, Edelglass contacted the KeraStraight manufacturer directly "to inquire as

to whether their product had a 'fail rate' and whether it could possibly make one's hair dry and brittle." (*Id.* ¶ 17.) KeraStraight defended their product to Edelglass, but she later learned that Ulta had "stopped using the product throughout its salon chain because 'it does not work.'" (*Id.*)

Thereafter, Ulta provided Edelglass with a corrective conditioning treatment, which failed to reverse the damage. (*Id.* ¶ 18.) Ulta also sold Edelglass shampoo and conditioner to "wash out the keratin," but the products also were not effective. (*Id.*) Ultimately, the manager of Ulta's Howell location informed Edelglass that the staff were not able to handle the matter further and referred Edelglass to Ulta's Freehold, New Jersey location. (*Id.* ¶ 19.) Edelglass received another conditioning treatment at the Freehold location, but the second conditioning treatment was also unsuccessful in reversing the damage. (*Id.*)

Eventually, Edelglass was directed by Ulta's corporate office to file a claim with Ulta's insurance carrier, Gallagher Bassett Services ("GBS"). (*Id.* ¶ 20.) GBS instructed Edelglass to send photographs of her hair before and after the Treatment, as well as a post-keratin treatment plan from the stylist of her choosing. (*Id.* ¶ 21.) Edelglass claims GBS failed to keep in regular contact with her, reassigned her claim nearly a dozen times, and made two "paltry" settlement offers, both of which she rejected. (*Id.* ¶¶ 24-25.)

In July 2017, nearly two years after the Treatment was administered, Edelglass contacted the salon manager at Ulta's Howell location, who eventually asked her to "participate in a 10-minute 'pictures only' consultation." (*Id.* ¶ 28.) The manager also informed Edelglass that Ulta had stopped using KeraStraight because "it doesn't work." (*Id.*) Ultimately, the manager "did not want to participate in the consultation" with Edelglass because the manager was not involved in the Treatment and because so much time had elapsed since the Treatment. (*Id.*) The

4

manager further remarked that any consultation should have taken place as soon as Ulta learned of the damage, "not 22 months later." (*Id.*)

Nevertheless, Edelglass participated in an hour-long consultation, during which the manager was "combative, accusatory, and ignorant." (*Id.* ¶ 29.) Edelglass asserts the manager "disputed every word" out of her mouth with "what turned out to be 'false facts' in order to discredit her." (*Id.*) Furthermore, during the consultation, the manager "circled [Edelglass's] chair" while "nonchalantly trying to pull her badly tangled hair straight to create an illusion of better condition" as she took pictures. (*Id.*) Ultimately, "the salon manager admitted that Plaintiff's hair was burned and that the only real remedy was to cut it off." (*Id.*) After this consultation, "Ulta doubled its previous settlement offer," but Edelglass declined. (*Id.* ¶ 30.) Edelglass then notified GBS that she would be filing a personal injury lawsuit and made one final attempt to settle, but GBS did not respond. (*Id.* ¶¶ 31-32.)

On October 11, 2017, Edelglass filed a Complaint in the Superior Court of New Jersey, Law Division, Ocean County (Civ. A. No. OCN-L-2886-17). (Complaint (ECF No. 1-2).) On November 27, 2017, Ulta filed a Notice of Removal with this Court pursuant to 28 U.S.C. § 1441, asserting this Court's original jurisdiction under 28 U.S.C. § 1332 based on complete diversity of citizenship between the parties. (ECF No. 1.)

On December 4, 2017, Ulta filed a Motion to Dismiss Edelgass's Complaint. (ECF No. 3.) On the same date, Edelglass filed a Motion to Remand the matter back to state court. (ECF No. 4.) On July 17, 2018, this Court issued an Opinion and Order denying Edelglass's Motion to Remand and dismissing the Complaint without prejudice, stating in pertinent part:

> Here, Edelglass has not stated the nature of the claim(s) she seeks to assert. Further, she has not alleged sufficient facts to put Ulta on notice of the claim(s) against it. *Iqbal*, 556 U.S. at 698-99. To the extent Edelglass sought to provide additional facts in her

5

> opposition to Ulta's motion, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert denied*, 470 U.S. 1054 (1984) (alteration in original)).
>
> Therefore, Ulta's Motion to Dismiss is **GRANTED**.

(ECF No. 10 at 9.)

On August 7, 2018, Edelglass filed the Amended Complaint (ECF No. 12), and on August 28, 2018, Ulta filed a Motion to Dismiss the Amended Complaint. (ECF No. 13).

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant

6

is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

### III. DECISION

Ulta argues Edelglass's Amended Complaint should be dismissed because the Amended Complaint, like her original Complaint, fails to allege sufficient facts to put Ulta on notice of the claims against it. (ECF No. 13 ¶ 9.) More specifically, Ulta argues the Amended Complaint

7

"fails to identify any facts regarding how Ulta breached its duty, or what the alleged breach of duty was." (*Id.* ¶ 10.) Ulta further contends that Edelglass's focus on the keratin product's ineffectiveness, and the inexperience of the stylist, leaves Ulta confused as to whether Edelglass is "making a claim for product liability regarding the actual keratin product, or negligence in the application" of the keratin product. (*Id.* ¶ 14.) Edelglass counters that the Amended Complaint pleads sufficient facts to withstand Ulta's Motion to Dismiss as it "paints a very clear picture of negligence." (ECF No. 14 at 3-5.)

A plaintiff asserting a claim of negligence must allege, at a minimum, that the defendant owed the plaintiff a duty, the defendant breached that duty, causation, and damages. *Fernandes v. DAR Dev. Corp., Inc.*, 119 A.3d 878, 885-86 (N.J. 2015). While recognizing that greater latitude is given to *pro se* parties (*id.* ¶ 22), Ulta argues that Edelglass's Amended Complaint only states the legal conclusion that Ulta breached a duty, rather than alleging facts that describe "in what manner its duty may have been breached" or "how such a breach was the cause of [the] injuries." (*Id.* ¶ 25.)

In her opposition to Ulta's motion, Edelglass argues the Amended Complaint "asserts pertinent facts . . . as to how Ulta breached its duty [and] supplies another nearly seven (7) pages of facts in support of her claim." (ECF No. 14 ¶ 4.) She reiterates her hair "was, in fact, 'damaged beyond repair,' aka burned." (*Id.* ¶ 3.) In addition, Edelglass clarifies that she is not making a claim for product liability and that she is only "mak[ing] a claim against Ulta for its negligence including its use of the KeraStraight keratin product." (*Id.* ¶ 4.) As Edelglass concedes, "[a] leap to product liability against the product's manufacturer . . . is a leap way too far." (*Id.*) Edelglass argues Ulta had a "legal obligation to conduct tests to determine the effects of a particular product on a patron's hair to avoid injury" and that "[f]ailure to conduct such tests

is a breach of duty on the part of the salon." (*Id.* ¶ 6.) She further maintains that, "in regards to the product's application, a salon has a duty to properly administer the treatment in terms of what treatment is appropriate; how the treatment is to be used; and thereafter carefully and diligently perform the treatment." (*Id.*)

In ruling on a motion to dismiss, courts are required to liberally construe pleadings drafted by *pro se* parties. *See Tucker v. Hewlett Packard, Inc.*, No. 14-4699, 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, *pro se* litigants must still allege facts, which, if taken as true, would suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). "To do so, [a plaintiff] must plead enough facts . . . to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). Liberal construction also does not require the Court to credit a *pro se* plaintiff's "bald assertions" or "legal conclusions." *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

In the Amended Complaint, Edelglass does not set forth the nature of the claim(s) she seeks to assert, nor has she alleged facts sufficient to put Ulta on notice of the claim(s) against it. *Iqbal*, 556 U.S. at 698-99. As with Edelglass's original Complaint, to the extent she has sought to provide additional facts in her opposition "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman*

*v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1984) (alteration in original)). As such, Edelglass's inclusion of additional legal obligations in her opposition to Ulta's Motion to Dismiss and in further support of her negligence claim – i.e., an obligation to test the products and failure to do so – cannot be considered because Edelglass made no mention of those alleged obligations and breaches in the Amended Complaint. (*See* ECF No. 14.)

Even assuming Edelglass is asserting a claim for negligence rather than product liability, she fails to state a claim based on these limited allegations. "Negligence has been defined as conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." *McKinley v. Slenderella Systems of Camden, N.J.*, 165 A.2d 207, 212 (N.J. 1960) (citing *Harpell v. Public Service Coord. Transport*, 120 A.2d 43, 46 (N.J. 1956)). "In the field of negligence we compare [a] defendant's conduct with that which the hypothetical person of reasonable vigilance, caution and prudence would have exercised in the same or similar factual situation." *McKinley*, 165 A.2d at 221 (citing *Overby v. Union Laundry Co.*, 100 A.2d 205, 208 (N.J. Super. App. Div. 1953)). Here, by alleging only that Ulta breached its duty by causing injury to her without stating how it breached that duty, Edelglass has not sufficiently stated her claims to put Ulta on notice of the claims against it. *Iqbal*, 556 U.S. at 698-99. Rather than alleging Ulta acted unreasonably in how it carried out the keratin treatment, Edelglass summarily states that Ulta was negligent because the treatment resulted in damage to her hair. (*See* ECF No. 12 ¶ 4.) Despite the liberal construction of *pro se* complaints, this Court cannot give credit to such legal conclusions. *Gibney*, 547 F. App'x at 113.

However, while Edelglass's Amended Complaint is deficient, she may be granted leave to amend her complaint once again. If Edelglass were to further amend the Amended Complaint

to include the additional legal obligations she laid out in her Opposition to Ulta's Motion to Dismiss, it is possible that a second amended complaint may state a claim as to how Ulta breached its duty and how that breach proximately caused her damages. These elements, which were absent in the Amended Complaint, are crucial to surviving a motion to dismiss. The Court has determined this is an appropriate disposition, especially in light of Edelglass's status as a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. at 520. Accordingly, Ulta's Motion to Dismiss is **GRANTED** and Edelglass's Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

## IV.    CONCLUSION

For the reasons set forth above, Ulta's Motion to Dismiss Edelglass's Amended Complaint is **GRANTED** and Edelglass's Amended Complaint is **DISMISSED WITHOUT PREJUDICE** in accordance with the accompanying Order.

**Date: March 18, 2019**

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**